# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| JOE WATKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 04-1124 T/An |
| | ) |
| CSX TRANSPORTATION, INC., | ) |
| a corporation, | ) |
| | ) |
| Defendant. | ) |

## Joint Pretrial Order

In accordance with the pretrial procedures of the United States District Court for the Western District of Tennessee, the parties hereby submit the following [Proposed] Joint Proposed Pretrial Order.

### I. Jurisdiction

Jurisdiction is not disputed at this time, as this matter is properly before the Court. Plaintiff has filed this action against the Defendant under the Federal Employees Liability Act, 45 U.S.C. § 51, *et seq.*; therefore, jurisdiction is properly before the Court pursuant to 28 U.S.C. § 1331.

### II. Pending Motions

Both Plaintiff and Defendant have filed Objections to opposing party's Witness and Exhibit List. No other matters are currently outstanding before the Court.

### III. Status of Pleadings

The pleadings are complete.

## IV. Status of Discovery

Discovery is complete.

## V. Statement of the Case

Plaintiff brought this action against Defendant for claims arising out of personal injuries allegedly suffered by Plaintiff while working in the scope of his employment for Defendant. Plaintiff has filed suit under the Federal Employees Liability Act, 45 U.S.C. § 51, *et seq.*, and Plaintiff contends that Defendant was negligent by not providing Plaintiff with a safe working environment. Plaintiff seeks to recover past medical expenses; past physical and mental pain and suffering; and future mental anguish. Defendant denies liability and contends that Plaintiff has suffered no injuries that entitle him to recover monetary damages.

## VI. Contention of the Parties

### Plaintiff's Contentions

On July 7, 2001, the plaintiff, Joe Watkins, was working as a railroad conductor for the defendant, CSX Transportation, Inc., between Gibson and Milan, Tennessee, when it became his duty to walk the entire length of his train so as to locate a "defect" in the train. A "defect detector" machine had notified the plaintiff that he needed to immediately stop his train and walk back the length of the train and locate the defect. Plaintiff walked the train, but no defect was found. Before the plaintiff could return to the locomotive engine and re-board the train, Defendant's Trainmaster at Bruceton, Tennessee, ordered the locomotive engineer to take the train and leave the plaintiff at that location on the mainline and proceed to Bruceton. The Plaintiff was abandoned by

the defendant's train without his "grip" which contained his blood pressure medication. The plaintiff was assured that a taxicab, operated by an agent of CSX Transportation, Inc., would arrive shortly and drive him to Bruceton, Tennessee. The plaintiff was not picked up until over three hours later. During that period, the plaintiff was exposed to a heat index from 93 degrees to 104 degrees. During the beginning of that period, the plaintiff was scheduled to take his daily blood pressure medicine, but his medicine had left with his train on orders of the trainmaster in Bruceton. As a proximate consequence of being abandoned for such a long period of time without medicine, water or cover, the plaintiff became nauseated, weak and so sick that when the cab, driven by an agent of the defendant railroad company, did arrive, the plaintiff needed medical treatment and was taken immediately to the nearest hospital emergency department at Milan, Tennessee, where the plaintiff was treated for chest pain, nervousness, weakness and nausea.

The Plaintiff maintains that the defendant railroad negligently failed to provide the plaintiff with a safe workplace, a workplace free of a heat index of 93-104 degrees without water and without the plaintiff's cardiovascular medication which had been taken away from plaintiff by the defendant without the plaintiff's acquiescence. The Plaintiff maintains that the defendant railroad was negligent in that it abandoned the plaintiff at a place where agents of the defendant could not find him for over three hours during which he was exposed to a heat index of 93-104 degrees without water and without his cardiovascular medication which had been taken away from the plaintiff by the defendant without plaintiff's acquiescence. The Plaintiff maintains all of his injuries and damages were proximately caused, in whole or in part, by the defendant railroad's

negligence in that its said trainmaster and taxi drivers failed to abide by reasonably safe safety practices at the location where the plaintiff was required to perform and carry out his work and labor for the defendant at the time and place where the plaintiff suffered his aforesaid injuries. The Plaintiff maintains that all of his injuries and damages were proximately caused, in whole or in part, by the negligent failure of the defendant railroad company to provide to the plaintiff a reasonably safe place for plaintiff to do his work and labor for the defendant.

The Plaintiff seeks to recover for the following elements of damages:

(1)   Past medical expenses;

(2)   The shock and terror of the acute injuries;

(3)   Past physical pain and mental anguish; and

(4)   Future mental anguish.

The plaintiff seeks to recover a sum that will fully and fairly compensate him for his special and general damages in the amount of One Hundred Fifty Thousand Dollars ($150,000.00).

## Defendant's Contentions

Plaintiff is a conductor for Defendant and was working within the scope of his employment on July 7, 2001. On July 7, 2001, Plaintiff was assigned to be the conductor on train Q125 ("Q125"), which was to travel from Memphis, Tennessee northward. The crew was to change in Bruceton, Tennessee at the CSX yard ("Bruceton yard"). When Q125 was traveling through Gibson, Tennessee, the train passed over a defect detector. The defect detector triggered a response in the Q125 engine that notified the crew of a possible defect on the train. The train was required to

stop, and Plaintiff, as the conductor, was responsible for checking the train for any defects. Once the train was stopped, Plaintiff exited the train at the Golden Eagle Road crossing. Because the defect detector indicated that the defect was toward the rear of the train, the train's engineer, Mr. Luckett, let Plaintiff exit the engine and then pulled the train approximately one to one and one-half miles north of the crossing so Plaintiff was positioned at the rear of the train without having to walk the distance of the train.

Plaintiff checked the train and could not find any possible defect, so the decision was made to continue the train towards Bruceton. Defendant, relying on multiple factors, ultimately decided to continue the train to the Bruceton yard without waiting for Plaintiff to walk the mile or more distance to the lead engine. First, the Q125 was behind schedule, and if the train did not immediately start on to Bruceton, Defendant's employees would reach their maximum daily work limit. In that case, Defendant would have to stop the train somewhere between Gibson, Tennessee and the Bruceton yard, have Defendant's employees apply hand-locking brakes to various cars on the train, send a replacement crew from either Bruceton, Tennessee or Memphis, Tennessee to complete Q125's run to the Bruceton yard, and also send a taxi cab to pick up both the Q125 engineer and conductor. Second, the Q126 train was on the tracks in Trezevent, Tennessee waiting for the Q125 train to pass it. If the Q126 had to wait an extended period of time for Plaintiff to walk the mile or more to the front of the train, it would have severely effected the scheduling of that train, and further may have likely caused a similar delay situation for those CSX employees. Third, Defendant notified a taxi cab company in Camden, Tennessee to pick up Plaintiff at approximately 8:30 AM CST, and Defendant estimated it would take approximately one hour to reach the Plaintiff by

the tracks at the Golden Eagle Road Crossing.  Therefore, Defendant reasoned it would be more harmful to the good of all railroad employees and more physically demanding to require Plaintiff to walk the mile or more to the front of the train, only to have to stop the train, tie it down, and then send a taxi for both, than it would be to send a taxi cab to pick him up only the plaintiff.

The taxi driver arrived in the general vicinity of where Plaintiff was located at approximately 9:30 to 10:00 CST; however, the taxi driver could not find Plaintiff.  The taxi driver drove to multiple locations looking for Plaintiff.  The taxi driver was equipped with a CSX radio device, and the driver called for Plaintiff every few minutes on the radio.  At no time did the taxi driver cease looking for Plaintiff, and Defendant contends that it used every reasonable measure possible to ensure Plaintiff was picked up as quickly and safely as possible.

Defendant contends that while Plaintiff had to wait for the taxi cab to arrive to pick him up, Plaintiff did not sustain any permanent physical or emotional injuries as a result of the decision to start the train toward Bruceton.  Defendant contends it called the taxi cab immediately after deciding to continue Q125 on toward Bruceton.  Plaintiff alleges in his Complaint that he was without his high blood pressure medicine when he was waiting for the taxi cab.  While Defendant acknowledges Plaintiff was without his medicine, Defendant contends that Plaintiff had ample opportunity to ask the Q125 engineer to throw his personal grip, which contained his medicine, off the train for him to get his medicine before the train headed north towards the Bruceton yard.  He would have had to walk to where the lead engine had stopped, but he would have had his medicine.  Additionally, Defendant contends that Plaintiff sustained no permanent or

serious injury as a result of not taking his blood pressure medicine during the time he was waiting for the taxi cab. Plaintiff's blood pressure was elevated when he arrived at the Milan General Hospital, but when he left the hospital that day, his blood pressure had returned to normal levels. Finally, at no time was Defendant aware that Plaintiff had any blood pressure problem. Plaintiff would have heard the instructions to move the train towards the Bruceton yard but never voiced any objections or concerns. Defendant was therefore not aware that any blood pressure medicine was needed or located in Plaintiff's grip on the train.

Plaintiff also alleges in his Complaint that Defendant did not provide Plaintiff with a safe working environment and that Defendant left Plaintiff in the heat without food or water. Defendant contends that another CSX train (Q126) stopped approximately one hour after the Q125 left for Bruceton and gave Plaintiff multiple bottles of water. Additionally, there was water on the Q125 train, but Plaintiff did not ask the train's engineer to leave him any water on the side of the tracks.

In his deposition, Plaintiff alleged that he suffered lost wages as a result of this incident, but Defendant contends that Plaintiff's annual income did not decrease significantly after this incident. Since these damages are not claimed by the Plaintiff in its contentions, it is uncertain as to whether the Plaintiff is claiming these damages. The Defendant denies any such damages are applicable. Plaintiff alleges in his Complaint that he suffered mental injuries at the time of the incident and that he is still suffering from mental anguish as a result of the incident; however, Defendant contends that Plaintiff both did not suffer any mental injury on the day of the incident and that Plaintiff is not currently suffering any mental distress as a result of the July 7, 2001

incident. Simply put, Plaintiff can offer no medical proof that he is suffering from any medical conditions relating to mental distress.

## VII. Statement of Uncontested Facts

1. Plaintiff is an employee for Defendant.

2. Defendant is a common carrier by railroad engaged in the business of operating a railroad in interstate commerce.

3. Plaintiff was working within the scope of his employment for Defendant on July 7, 2001 on train Q125.

4. Plaintiff's duties of employment for Defendant were in furtherance of interstate commerce or directly or closely affected by interstate commerce.

5. This action is brought under and by the provisions of the Federal Employers' Liability Act.

6. While passing over a defect detector in Gibson, Tennessee, the Q125 train's lead engine notified the crew that there was a possible defect toward the rear of the train.

7. While at the rear of the train, Plaintiff could not locate a defect on the train.

8. The taxi cab took Plaintiff directly to the emergency room at Milan General Hospital. While at the Milan General Hospital, Plaintiff was examined by medical doctors.

9. After leaving the emergency room, Plaintiff was driven to the Bruceton Yard to collect his personal belongings and his car.

10. Plaintiff drove himself home from the Bruceton yard.

## VIII. Statement of Contested Issues of Fact

1. Whether while Plaintiff was at the rear of the train looking for a defect, a supervisor of the railroad instructed Plaintiff's locomotive engineer to leave him on the mainline.

2. Whether Plaintiff's grip which contained plaintiff's blood pressure medication was on the locomotive engine when the train left Plaintiff on the mainline.

3. Whether Plaintiff was left on the mainline for approximately three hours and exposed to a heat index of 93-104 degrees.

4. Whether during the three hours that the plaintiff was left on the mainline, he had no communication from the defendant regarding the cab or the cab's whereabouts.

5. Whether Plaintiff did not take his blood pressure medicine while waiting for the taxi cab to meet him.

6. Whether Plaintiff was sick, dizzy and felt nauseous on July 7, 2001.

7. Whether Plaintiff suffered any physical or mental injuries as a result of the July 7, 2001 incident.

8. Whether Plaintiff suffered any loss of earnings or earning capacity after the July 7, 2001 incident.

9. Whether Plaintiff currently suffers from any mental distress as a result of the July 7, 2001 incident.

10. Whether Defendant ordered the taxi cab at approximately 8:30AM CST (9:30 AM railroad time) and whether the taxi cab, from City Taxi in Camden,

Tennessee, was instructed to pick up Plaintiff by the tracks and bring Plaintiff to the Bruceton yard.

11.     Whether Plaintiff was supplied any water by another CSX train on July 7, 2001.

12.     Whether Plaintiff was given time to rest in the shade on another CSX train or under a shade tree on July 7, 2001.

13.     Whether when Plaintiff left the hospital, his blood pressure had returned to a normal limit, he did not feel nauseous and his feelings of his symptoms of dizziness were getting back to normal.

14.     Whether Plaintiff was in the hospital for an hour and a half to two hours.

15.     Whether Plaintiff missed any work as a result of the July 7, 2001 incident.

## IX. Contested Issues of Law

1.      Whether Plaintiff can establish Defendant was negligent in providing Plaintiff a safe working environment.

2.      Whether Plaintiff was partially responsible for any damages suffered by Plaintiff, and if so, to what extent was Plaintiff partially responsible for any damages suffered by Plaintiff.

3.      Whether Plaintiff is entitled to monetary damages for physical and mental injuries.

## X. List of Exhibits

### For the Plaintiff

1.      Emergency Room records from Milan General Hospital, 4039 South Highland Avenue, Milan, TN 38359-3167

2. Statements of account from Milan General Hospital.

3. Summary of Weather Conditions on July 7, 2001, in Milan, Tennessee, from Compu-Weather, Inc.

4. Plaintiff's personnel file maintained and kept by the defendant CSX.

5. Wage records regarding the plaintiff.

6. Transportation voucher for City Taxi regarding the incident.

7. Photographs of the area where plaintiff was injured.

8. W-2 form from defendant railroad company, as employer of the plaintiff, for the year 2000.

9. W-2 form from defendant railroad company, as employer of the plaintiff, for the year 2001.

10. W-2 form from defendant railroad company, as employer of the plaintiff, for the year 2002.

11. W-2 form from defendant railroad company, as employer of the plaintiff, for the year 2003.

12. W-2 form from defendant railroad company, as employer of the plaintiff, for the year 2004.

13. List of plaintiff's earnings from the defendant railroad for the years 2000, 2001, 2002, 2003 and 2004.

14. The defendant railroad company's outline of work duties of a railroad trainman on the CSX Transportation, Inc., railroad.

15. Safety Rules of the defendant railroad company.

16. Operating Rules of the defendant railroad company.

17. Exhibits attached to any depositions taken in this case.

18. CSX Transportation seniority roster regarding the plaintiff.

19. Income Tax Returns for the years 2000; 2001; 2002; 2003 and 2003.

20. The medical file of the plaintiff kept by the defendant CSX.

21. Photographs of trainmen performing various duties.

22. Memo dated July 25, 2001, to all Mid-West Region Transportation Managers from John O. Williams.

23. Letter dated July 8, 2001, to Mr. L. D. Moody, the General Chairman of the United Transportation Union from Howard S. Emerick.

24. Plaintiff's medical records from Dr. Matthew Smolin.

25. Any and all admissible exhibits offered by defendant.

26. Any and all exhibits to be used for purposes of impeachment.

### For the Defendant

1. Maps of Railway Line

2. Summary of wages earned by Plaintiff while working for Defendant from 1995 to Present.

### Stipulations

Except as otherwise indicated in the party's Objections to Exhibit List, the authenticity of exhibits has been stipulated by the parties and they have been received subject to objections, if any, by opposing party at trial as to their relevance and materiality. In the event that either party identifies any other exhibits they may wish to introduce at trial, a copy of the same will be provided to opposing counsel at least ten

(10) days prior to trial. Both parties agree that any such additional exhibits may be admitted at trial only upon leave of Court.

The parties agree that all documents produced through discovery either by Defendant or Plaintiff are authentic and no objections will be made to their admissibility except on the basis of relevancy. The parties agree that all personal information of third parties, such as names, addresses, and social security numbers, shall be redacted before any exhibit is entered with the court.

By signing this Pretrial Order, neither party waives any objections they may have to any Exhibits listed by the other party as provided in that party's Objections to Exhibit List.

## XI. Witnesses

### For the Plaintiff

Witnesses Plaintiff will present:

1. Joe Watkins
   The Plaintiff
   415 Como Street
   McKenzie, TN 38201

2. Deborah Watkins
   Plaintiff's wife
   415 Como Street
   McKenzie, TN 38201

3. J. K. Luckett
   Engineer
   c/o CSX Transportation, Inc.

4. J. H. Eason
   Engineer
   c/o CSX Transportation, Inc.

5. Jerry Taylor
   Conductor

c/o CSX Transportation, Inc.

6. Dr. Paul J. Smith
   Emergency Room Physician
   c/o Milan General Hospital
   4039 South Highland Avenue
   Milan, TN 38359-3167

7. Glenda Daniel
   c/o City Taxi
   166 Doty Street
   Camden, TN 38230

Witnesses Plaintiff will present, if the need arises.

1. Ed Anderson
   Trainmaster
   c/o CSX Transportation, Inc.

2. Russ McDonald
   c/o CSX Transportation, Inc.

3. Donnie Moore
   c/o CSX Transportation, Inc.

4. John O. Williams
   c/o CSX Transportation, Inc.

5. L. D. Moody
   General Chairman - UTU

6. Howard S. Emerick
   Assistant Vice President
   National Bargaining
   c/o CSX Transportation, Inc.

7. Don Noell
   Labor Relations
   c/o CSX Transportation, Inc.

8. S. M. Davis, Engineer
   c/o CSX Transportation, Inc.

9. C. E. Childers, Conductor
    c/o CSX Transportation, Inc.

10. Ronnie Daniel
    c/o City Taxi
    166 Doty Street
    Camden, TN 38230

11. Jimmy Hivick
    c/o City Taxi
    166 Doty Street
    Camden, TN 38230

12. Medical personnel
    Milan General Hospital
    4039 South Highland Avenue
    Milan, TN 38359-3167

13. Dr. Matthew Smolin
    Jackson, Tennessee

14. Any witness listed by Defendant.

### For the Defendant

Witnesses Defendant will present:

1. Mr. Ed Anderson
    Trainmaster
    c/o CSX Transportation, Inc.

2. Mr. J.K. Luckett
    Engineer
    c/o CSX Transportation, Inc.

3. Ms. Glenda Daniel
    c/o City Taxi
    166 Doty Street
    Camden, Tennessee 38230

Witnesses Defendant will present, if the need arises.

1. Mr. Lee Miller
    Manager Field Investigations

       3000 Seaboard Drive
       Nashville, TN 37211

2.   Mr. Ronnie Daniel
     c/o City Taxi
     166 Doty Street
     Camden, Tennessee 38230

3.   Mr. Joe Watkins
     415 Como Street
     McKenzie, TN 38201

4.   Ms. Deborah Watkins
     Wife of Plaintiff
     415 Como Street
     McKenzie, TN 38201

5.   Mr. J.H. Eason
     Engineer
     c/o CSX Transportation, Inc.

6.   Mr. Jerry M. Taylor
     Conductor
     c/o CSX Transportation, Inc.

7.   Mr. Jimmy Hivick
     c/o City Taxi
     166 Doty Street
     Camden, Tennessee 38230

### Other

In the event there are other witnesses to be called at the trial, their names and addresses and the general subject matter of their testimony will be reported to opposing counsel, with copy to the Court, at least ten (10) days prior to trial. Such witnesses may be called only upon leave of Court. This restriction shall not apply to rebuttal or impeachment witnesses. By signing this Pretrial Order, neither party waives any objections they may have to any of the witnesses listed by the other party in that party's

Objections to Witness List and any rebuttal, impeachment or rehabilitation witnesses the other party attempts to call.

## XII. Estimate of the Length of Trial

The parties estimate the trial will last approximately two (2) to three (3) days. This case is set for trial to begin November 28, 2005.

## XIII. Attorneys Interested in this Case

### For the Plaintiff

Stephen R. Leffler (#11038)
707 Adams Avenue
Memphis, TN 38105
901-527-8830

Frank O. Burge, Jr. (#14569)
Burge & Burge
1375 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
205-251-9000

### For the Defendant

Edwin E. Wallis, Jr. (#8499)
Edwin E. Wallis, III (#23950)
Moss, Benton & Wallis, PLLC
P.O. Box 3897
Jackson, Tennessee 38303-3897
(731) 668-5500

## XIV. List of Special Equipment

The parties request no special equipment that is not already provided by the Court. However, Defendant may bring a laptop computer for presentation of certain portions of the trial and for presentation of certain exhibits.

## XV. Settlement Chances

The chances of settling this matter before trial is fair.

_____
JAMES D. TODD
United States District Judge

21 November 2005
DATE

APPROVED FOR ENTRY:

_____
Frank O. Burge, Jr.
BURGE & BURGE
Attorneys for Plaintiff
1375 Park Place Tower
2001 Park Place North
Birmingham, AL 35203

Stephen R. Leffler
707 Adams Avenue
Memphis, TN 38105

**Attorneys for Plaintiff Joe Watkins**

_____
Edwin E. Wallis, Jr. (#8499)
Edwin E. Wallis, III (#23950)
Moss, Benton & Wallis, PLLC
P.O. Box 3897
Jackson, TN 38303-3897
(731) 668-5500
(731) 664-2840 (fax)

**Attorneys for Defendant CSX Transportation, Inc.**

F:\CSX\WATKINS\Pretrial Order.wpd

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 24 in case 1:04-CV-01124 was distributed by fax, mail, or direct printing on November 22, 2005 to the parties listed.

---

Frank O. Burge
BURGE & BURGE
2001 Park Place North
Birmingham, AL 35203

Stephen R. Leffler
LEFFLER LAW OFFICE
707 Adams Ave.
Memphis, TN 38105

Edwin E. Wallis
MOSS BENTON & WALLIS, PLLC
325 N. Parkway
P.O. Box 3897
Jackson, TN 38303--389

Edwin E. Wallis
MOSS BENTON & WALLIS, PLLC
325 N. Parkway
P.O. Box 3897
Jackson, TN 38303--389

Honorable James Todd
US DISTRICT COURT